UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICHARD N. BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01174-JRS-MPB |
| | ) | |
| CARMEN COMMERCIAL REAL ESTATE SERVICES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## Order

Between 2011 and 2019, Plaintiff Richard N. Bell filed dozens of copyright in-fringement suits in this district, all arising from the defendants' alleged publication of photographs of the Indianapolis skyline. *See Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1077 (7th Cir. 2018) ("Bell has prosecuted dozens of similar copyright lawsuits be-fore"). This one went to trial by jury.

The jury found that Bell did not prove that he "authored the Indianapolis Skyline Photo, that he owns a copyright in it, and that he registered it with the Copyright Office." (Jury Verdict ¶ 1, ECF No. 135.) Accordingly, judgment was entered in favor of Defendant Carmen Commercial Real Estate Services. (Judgment, ECF No. 140.) Bell now moves for a new trial, (ECF No. 141), and Defendant moves for attorney's fees and costs, (ECF No. 145).

1

## I.  Bell's Motion for a New Trial

Bell testified that he took the daytime photograph of the Indianapolis skyline in March or May 2000, while he worked at the law firm Cohen & Malad, and that the photograph was posted to Cohen & Malad's website.  (Tr. Vol. 1 at 125:1–3.)  In another of Bell's cases in this district, *Bell v. Maloney*, Case No. 1:16-cv-1193, the defendant contended that Bell took the photograph as a work made for hire, such that Cohen & Malad, not Bell, was the photograph's author under the Copyright Act.  *See* 17 U.S.C. § 201(b).  After a bench trial in that case, Judge Young held that the defendant lacked standing to assert that the photograph was a work made for hire.

In seeking a new trial in *this* case, Bell contends that the Court erred in allowing Defendant to assert that the photograph was a work made for hire, and in giving the jury an instruction on ownership that incorporated work-made-for-hire language. (Pl.'s Mem. Supp. Mot. New Trial, ECF No. 142.)  Specifically, Bell argues (1) that Defendant should not have been allowed to raise the work-made-for-hire issue (principally for lack of standing), (2) that the evidence adduced at trial was insufficient to warrant inclusion of the work-made-for-hire language in the ownership instruction, and (3) that the instruction wrongly allocated the burden of proof to Bell on the work-made-for-hire issue.  (Pl.'s Mem. 2–4, ECF No. 142; Pl.'s Suppl. Br. 2, ECF No. 151.) Defendant responds that it had standing to raise the work-made-for-hire issue and that Bell waived any objection to the instruction by failing to make his objection during trial.

## A. *Legal Standard*

"A court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (quotation marks, alterations, and citations omitted). Under Rule 51(c)(1), "[a] party who objects to an instruction or the failure to give an instruction must do so on the record stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "A party may assign as error . . . an error in an instruction actually given, if that party properly objected." Fed. R. Civ. P. 51(d)(1)(A).

## B. *Discussion*

Defendant proposed the jury instruction on copyright ownership containing the challenged work-made-for-hire language. (ECF No. 134 at 2.) The Court's proposed instruction substantially adopted Defendant's proposed instruction:

**Final Instruction No. 11**
**Ownership**

Plaintiff "owns" a copyright in the Indianapolis Skyline Photo if, and only if,

(1) he created the Photo; and

(2) he did not create the Photo within the scope of his employment at Cohen & Malad.

It is Plaintiff's burden to prove ownership of the Photo by a preponderance of the evidence.[1]

---

[1] The sole focus of Bell's motion—and hence this Order—is the second prong of the instruction. It is, of course, possible that the jury discredited Bell's testimony and found that Bell failed to prove the first prong.

3

(ECF No. 144-1.)  The proposed instructions—including the ownership instruction—were provided to counsel after the first day of trial, and essentially combined the pattern instructions on ownership and work-for-hire.  (Tr. Vol. 1 at 205:7–19.)  Bell did not object to the instruction before Defendant rested its case:

> THE COURT:  [. . .] Any questions or modifications requested by the plaintiff --
> MS. KENNEDY:  No, Your Honor.
> THE COURT: -- to any of the instructions?

(Tr. Vol. 2 at 7:10–13.)  Nor did Bell object to the instruction after Defendant rested. (*See generally* Tr. Vol. 2 at 328:7–340:25.)  Nor did Bell object to the instruction after the charge was given:

> THE COURT: [. . .]  In addition, any objections to the jury charge that was actually given, Ms. Kennedy?
> MS. KENNEDY:  No, Your Honor.

(Tr. Vol. 2 at 365:24–366:1.)  In short, not until his motion for a new trial did Bell challenge the instruction on the grounds of sufficiency of the evidence, (ECF No. 142 at 4–5), and not until his supplemental brief in support of that motion did Bell challenge the instruction on the grounds of the allocation of the burden of proof, (ECF No. 151 at 2).  While Bell did tender a different proposed instruction on ownership, "[m]ere tendering of proposed instructions different from the instructions given is not sufficient to preserve an objection to the instructions that are given." *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017) (alteration and quotation marks omitted).[2]  Bell therefore has not preserved his objections on those grounds.

---

[2] Bell's proposed instruction stated, "Plaintiff owns a copyright in Indianapolis Skyline Photo if he created the work."  (ECF No. 129 at 6.)

Bell did, however, file a motion in limine—albeit an untimely one—arguing that the "work-for-hire affirmative defense should be precluded" because it was not pleaded as an affirmative defense in Defendant's answer and because Defendant lacked standing to raise the issue, relying on Judge Young's decision in *Bell v. Maloney*, 1:16-cv-1193-RLY-DML, ECF No. 86 (S.D. Ind. May 23, 2019). (*See* ECF No. 116-1.) That motion was denied. Bell contends that his motion in limine preserved his objection to the instruction and to the admission of any work-made-for-hire evidence.[3]

The denial of Bell's motion in limine was not erroneous. First, Defendant did not waive or forfeit the argument that the photograph was a work made for hire. Defendant's work-made-for-hire challenge to Bell's ownership was not an affirmative defense required to be pleaded under Rule 8(c). "A few courts have (erroneously) held that the assertion by defendant of work-for-hire status is an affirmative defense. . . . As a fundamental matter, an affirmative defense arises when a defendant admits the essential elements of plaintiff's prima facie case but sets up other facts or legal arguments by way of avoidance of infringement. By contrast, an answer or other argument for why plaintiff has not *established* a prima facie case in the first place is not asserting an affirmative defense, but instead is denying any liability." 2 PATRY ON COPYRIGHT § 5:95.50 (citing *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016)). Ownership of a valid copyright is an element of a claim for copyright infringement. *Peters*

---

[3] Bell's reference, in his reply, (ECF No. 166), to his objection at the final pretrial conference and before the start of trial appears to refer to his motion in limine and an objection filed on the eve of trial, (Pl.'s Objection ¶ 10, ECF No. 131). Both cite the same grounds: failure to plead work-for-hire as an affirmative defense and lack of standing.

*v. West*, 692 F.3d 629, 632 (7th Cir. 2012). Copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). However, "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). In asserting that the photograph was a work made for hire, Defendant denied that Bell owned a valid copyright in the work—an essential element of Bell's claim. It is not an affirmative defense, and Defendant did not waive or forfeit the argument by failing to plead it as an affirmative defense under Rule 8(c).

Moreover, Bell had abundant notice that Defendant intended to contest ownership on the basis that the photograph was a work made for hire:

- On August 10, 2017, Defendant moved for sanctions, contending that Bell had wrongfully withheld documents relating to ownership and to his employment with Cohen & Malad. (ECF No. 52.)

- On January 16, 2018, Defendant moved to continue the trial date and to re-open discovery in order to obtain discovery pertaining to ownership and to Bell's employment with Cohen & Malad. (ECF No. 59.) That motion was granted. (ECF No. 60.)

- On September 27, 2018, Defendant moved to stay the case pending the resolution of the *Maloney* case, in which the defendant asserted that the photograph was a work made for hire. (ECF No. 79.) That motion was granted. (ECF No. 83.)

Accordingly, even if Defendant had been required to plead the work-made-for-hire challenge to ownership as an affirmative defense, in light of the course of the litiga-

6

tion, the Court would have exercised its discretion under Rule 15 to permit an amend-
ment and allow the evidence. *See* Fed. R. Civ. P. 15(b)(1) ("If, at trial, a party objects
that evidence is not within the issues raised in the pleadings, the court may permit
the pleadings to be amended. The court should freely permit an amendment when
doing so will aid in presenting the merits and the objecting party fails to satisfy the
court that the evidence would prejudice that party's action or defense on the merits.").

Second, Defendant had standing to assert that the photograph was a work made
for hire. As a threshold matter, Judge Young's decision in *Maloney* is not controlling
here. "Decisions of district courts bind the litigants but have no authoritative effect
elsewhere in the circuit (or even in the same district)." *520 Mich. Ave. Assocs., Ltd.
v. Devine*, 433 F.3d 961, 964 (7th Cir. 2006). Defendant Carmen Commercial Real
Estate Services was not a party to the *Maloney* case.

Respectfully, I reach a different conclusion than the *Maloney* court, which chiefly
relied on the Ninth Circuit's decision in *Jules Jordan Video, Inc. v. 144942 Canada
Inc.*, 617 F.3d 1146 (9th Cir. 2010). *Jules Jordan Video* involved copyright infringe-
ment claims brought by an actor and his company. The copyright registration listed
the actor as the author of the works, but the defendants contended that the copyright
was invalid because the actor made the works for hire for his company. The two
potential authors—the actor and his company—were effectively alter egos of one an-
other. *See id.* at 1156 ("The problem with the district court's analysis is that JJV was
a one-man shop. Gasper was the sole officer, director, and shareholder of JJV, exer-
cised complete control over it, and made all decisions concerning JJV and production

7

of the films.  It was all Gasper all the time. . . .  Since JJV was Gasper, JJV intended whatever Gasper intended, and if Gasper intended that his creative work be outside the scope of his employment, there was no one to disagree.").  In reasoning that the defendants lacked standing to claim the works were made for hire, the Ninth Circuit drew an analogy between § 204—the Copyright Act's statute of frauds, which requires that transfers of copyright ownership be memorialized in a signed writing, such as by a written assignment—and § 101's definition of a work made for hire.

The peculiar circumstances of *Jules Jordan Video* are not present here, and the analogy between § 204 and § 101 is inapt.  Section 204 provides that a transfer of copyright ownership is not valid without a signed writing.  The provision is "in the nature of a statute of frauds and is designed to resolve disputes among copyright owners and transferees." *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592 (7th Cir. 2003).  Third parties generally lack standing to challenge a contract for failure to comply with the statute of frauds.  *See* Restatement (Second) of Contracts § 144 (1981) ("Only a party to a contract or a transferee or successor of a party to the contract can assert that the contract is unenforceable under the Statute of Frauds.").  Thus, third parties lack standing to challenge copyright transfers' compliance with § 204's writing requirement.  *See Billy-Bob Teeth*, 329 F.3d at 592.

Sections 101 and 201, by contrast, are not "in the nature of a statute of frauds." In *Urbont v. Sony Music Entertainment*, 831 F.3d 80 (2d Cir. 2016), the Second Circuit declined to draw any analogy between § 204's writing requirement and the work-made-for-hire provisions of § 101 and § 201(b).  "Unlike Section 204, which concerns

the memorialization of an ownership transfer, the 'work for hire' doctrine guides the determination of ownership rights as between employers and employees or independent contractors. A plaintiff in a copyright suit bears the burden of proving ownership of the copyright, however, whether such ownership is challenged by an ostensible employer or by a third party. Indeed, even courts that have precluded third parties from challenging a plaintiff's ownership rights under the statute of frauds provision in Section 204 have permitted those parties to challenge the validity of the underlying ownership transfer." *Id.* at 88–89 (citations omitted). The court concluded that "third parties to an alleged employer-employee relationship have standing to raise a 'work for hire' defense against a claim of copyright infringement." *Id.* at 89.

The Seventh Circuit appears to be among those courts that "have precluded third parties from challenging a plaintiff's ownership rights under the statute of frauds in Section 204," yet have nevertheless "permitted those parties to challenge the validity of the underlying ownership transfer." *Id.* In *Billy-Bob Teeth*, the Seventh Circuit held that the third-party infringer lacked standing to challenge the transfer's compliance with the statute-of-frauds provision. 329 F.3d at 592. It also overturned the trial court's determination that the underlying transfer had not occurred—but not for lack of standing. Rather, the trial court improperly weighed the evidence and witnesses' credibility, invading the province of the jury. *Id.* at 592–93. Thus, the Seventh Circuit did not extend the limitation on third-party standing beyond statute-of-frauds challenges.

It therefore appears that third-party infringers have standing to challenge a plaintiff's ownership under § 101 and § 201(b), in contrast to a transfer's compliance with the statute of frauds under § 204.  Other courts have reached the same conclusion. *See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1490 (11th Cir. 1990) ("It is not unheard of . . . for the 'work-for-hire' issue to arise as a defensive tactic adopted by a third-party infringer to dispute the validity of the plaintiff's copyright.") (internal quotation marks and citation omitted); *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002) ("The cases hold that a third party does not have standing to challenge the presumption of ownership when plaintiffs claim ownership by assignment.   However, the case law is largely silent as how to treat third-party standing in instances of ownership by authorship . . . .  The third-party standing doctrine does not preclude this court from considering Napster's argument that the Schedule A Works are not 'works for hire.'") (citation omitted).  The denial of Bell's motion in limine was not erroneous, and Bell's motion for a new trial (ECF No. 141) is **denied.**

## II.  Defendant's Motion for Attorney's Fees and Costs

Defendant seeks attorney's fees and costs.[4]  The Copyright Act authorizes the court "in its discretion" to "allow the recovery of full costs by or against any party" and to "award a reasonable attorney's fee to the prevailing party as a part of the

---

[4] Bell contends that Defendant is not a prevailing party because Bell ought to get a new trial.  Bell's motion for a new trial is denied in this Order, so his argument now lacks whatever merit it might once have had.

costs." 17 U.S.C. § 505.  The Supreme Court has endorsed consideration of four non-exhaustive factors to determine whether to award fees under § 505:  "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d Cir. 1986)).

"[O]bjective reasonableness can be only an important factor in assessing fee applications—not the controlling one." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016).  District courts "must take into account a range of considerations beyond the reasonableness of litigating positions.  That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones)."  *Id.* (citation omitted).

In a "successful defense of an infringement suit, the defendant is entitled to a 'very strong' presumption in favor of receiving attorneys' fees, in order to ensure that an infringement defendant does not abandon a meritorious defense in situations in which 'cost of vindication exceeds the private benefit to the party.'  'For without the prospect of such an award, [an infringement defendant] might be forced into a nuisance settlement or deterred altogether from exercising [its] rights.'" *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014) (quoting *Assessment Techs. of Wis., LLC v. WIREdata, Inc.*, 361 F.3d 434, 436–37 (7th Cir. 2004)) (citations omitted).

11

Bell ultimately lost this case on ownership of the asserted copyright. His position on that issue was not unreasonable. His position on damages, however, was unreasonable. The evidence at trial was that licenses for similar images typically sell for $5 to $20, (Tr. Vol. 2 at 255:5–15), and that Bell typically licensed the photograph for $200. (Tr. Vol. 1 at 129:24–25.) In *Maloney*, after prevailing at trial, Bell was awarded $200 in statutory damages. Bell testified at trial that his "actual damages are probably $200." (Tr. Vol. 1 at 130:1–2.) Defendant here offered to settle the matter for $1,000 before suit was filed. (Tr. Vol. 2 at 258:20–21.) Yet Bell proceeded to trial seeking $150,000 in statutory damages on scant evidence of willful infringement. *See Harris Custom Builders, Inc. v. Hoffmeyer,* 140 F.3d 728, 731 (7th Cir. 1998) ("It seems to us, however, that an unreasonable rejection of a serious settlement offer might under some circumstances be a factor which could be considered in assessing the reasonableness of a fee request."); *FameFlynet, Inc. v. Jasmine Enterprises Inc.,* No. 17 C 4749, 2019 WL 3733592, at *2 (N.D. Ill. Aug. 8, 2019) (considering settlement negotiations to evaluate parties' litigation conduct on § 505 motion for fees); *Greenwich Film Prods., S.A. v. DRG Records, Inc.*, No. 91 CIV. 0546 (JSM), 1996 WL 502336, at *2 (S.D.N.Y. Sept. 5, 1996) ("However, when defendant offered $30,000 to settle the case before this action was filed it was totally unreasonable for plaintiff to demand $1,000,000 and to refuse to lower that demand until the eve of trial.").

Bell has filed many lawsuits over this photograph. Other judges have found indicia of improper motive: "Bell's motivation for filing this action appears to be an attempt to extract quick, small settlements from many defendants instead of using the

12

judicial process to protect his copyright against legitimate infringing actors." *Bell v. Taylor*, Case No. 1:13-cv-798-TWP-DKL, ECF No. 186 (S.D. Ind. Sept. 2, 2016); *see also Bell v. Lantz*, Case No. 1:13-cv-35-TWP-DKL, ECF No. 236 (S.D. Ind. June 8, 2015) (same). Here, the record similarly reflects that Bell used the threat of litigation costs to extract quick settlements. In his initial $5,000 settlement demand, Bell wrote:

> If not settled by noon May 9th, all offers will be withdrawn[,] and any settlement offers will be substantially higher, as you are responsible for statutory damages, costs, and the copyright holder's legal fees.

(Tr. Vol. 1 at 128:23–129:1.) In response to Defendant's offer to settle for $1,000, Bell wrote:

> The infringer is liable for statutory damages, plus copyright holder's attorney fees and costs, which is substantially more than $5,000. Suit will be filed May 9th, 20[1]6. If you wish to avoid legal action, deleting the photo without payment is not an option. You still owe $5,000 for past unauthorized use. Should the $5,000 not be paid by noon May 9th, 20[1]6, Rich Bell will be filing a lawsuit against Carmen Commercial Real Estate Services for copyright infringement. Once the lawsuit is filed, fees and costs go up and Carmen Commercial Real Estate Services will not be able to settle the case for $5,000. It will cost substantially more.

(Tr. Vol 1 at 132:14–17.)

The success of such demands—for an amount between 25 times (on a $200 valuation) and 1,000 times (on a $5 valuation) the market value of a license—depends upon litigation costs that render a defendant's trial victory hollow. A fee award therefore advances the goals of compensation and deterrence embodied in the Seventh Circuit's *Klinger* presumption. *See Klinger*, 761 F.3d at 792 ("The Doyle estate's business

13

strategy is plain:  charge a modest license fee for which there is no legal basis, in the hope that the 'rational' writer or publisher asked for the fee will pay it rather than incur a greater cost, in legal expenses, in challenging the legality of the demand.").

In short, the *Fogerty* factors weigh in favor of awarding fees.  Defendant seeks $169,087.23 in attorney's fees and $3,085.83 in costs.  The amount of fees and costs is supported by Defendant's counsel's declaration, time sheets, itemized expenses, and invoices.  The attorney's fees sought reflect a total of approximately 455 hours billed by a partner, associates, and paralegals, multiplied by their respective hourly rates.  Defense counsel's hourly rate of $420 to $435 is reasonable for the Indianapolis area given his experience.  His associates' rates of $280 per hour and $360 per hour, and his paralegals' rates of $190 and $205 per hour, are likewise reasonable.

In response, Bell contends that the time expended by Defendant's counsel was excessive and that the hourly rate reported by Defendant's counsel is inflated.  Bell does not object to any specific entry or entries.  Instead, Bell submits the declaration of his attorney, Maura Kennedy, averring that she billed 212.5 hours at a rate of $225.00 per hour for a total of $47,812.50 in attorney's fees.

The difference between Defendant's reported fees and Bell's reported fees does not undermine the reasonableness of Defendant's fee request here for two key reasons. First, the difference in hourly rates does not render Defendant's counsel's rates unreasonable, as Bell's counsel had been a licensed attorney for just two years at the commencement of this litigation, (Kennedy Decl. ¶¶ 4, 8, ECF No. 168-1), whereas lead defense counsel has been an attorney for over 35 years.  Second, the difference

14

in the number of hours billed is not probative, as Ms. Kennedy has served as Bell's "Co-Counsel." (Kennedy Decl. ¶ 1.) Bell himself is an attorney, filed his appearance on behalf of himself, (ECF No. 2), and has been extensively involved in this litigation in that capacity, making numerous filings on his own behalf, (*see* ECF Nos. 1, 8, 11, 19, 23, 59, 65, 66, 67, 68, 75, 80, 84, 88, 105, 106, 108, 128, 129, 141, 142, 143, 147, 151, 152, 158, 162, 163, 166, 168). Bell's hours are not reflected in Ms. Kennedy's declaration.

Bell complains that the Court did not grant his motion to compel discovery on fees. Bell filed two identical documents styled, "Plaintiff's request for order by the court to shorten time to seven day [sic] for defendant to produce certain documents." (ECF Nos. 162, 163.) In those filings, Bell sought to shorten the time for production of documents to seven days so that he could file a response, due in four days, to Defendant's motion for fees, which had been pending for three months. Like too many of Bell's filings in this case, the request was untimely, procedurally deficient, and well-nigh incomprehensible. It was properly denied for the reasons set forth in the Court's order (ECF No. 165).

Finally, Bell argues that the Court's ruling on summary judgment that the "designated evidence is sufficient at the summary judgment stage to support the first element of a copyright infringement claim," (ECF No. 56), was "the law of this case" so that "the issue of Bell's ownership should not have been a question for the jury," (ECF No. 168). The argument is frivolous. The Court denied Defendant's motion for

15

summary judgment after construing the facts in the light most favorable to the Plaintiff.  Bell did not move for summary judgment.  That Defendant was not entitled to summary judgment on ownership does not entail that Bell was so entitled.

Defendant's motion for attorney's fees and costs is **granted**.  The Court has considered and rejected the arguments set forth in Bell's response; Defendant's motion to strike Bell's response (ECF No. 169) is therefore **denied** as moot.

### Conclusion

For the reasons set forth above, Plaintiff Richard N. Bell's motion for a new trial (ECF No. 141) is **denied.**  Defendant Carmen Commercial Real Estate Services's motion for fees and costs (ECF No. 145) is **granted.**  Defendant is awarded its attorney's fees and costs in the amount of $172,173.06 against Mr. Bell.

**SO ORDERED.**

Date: 8/25/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Richard N. Bell
BELL LAW FIRM
richbell@comcast.net

Melanie Ann Eich
OVERHAUSER LAW OFFICES LLC
meich@overhauser.com

Maura K. Kennedy
THE LAW OFFICE OF MAURA K. KENNEDY, LLC
attorneymaurakennedy@gmail.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com